We'll now move to the next case on the calendar, and that is K.M. v. de Blasio v. others. Thank you. All right. We've got a full house, so let me just make sure we've got everybody. Ms. Zellman is online. Everybody else is here, I believe. So let me just make sure I understand the time. So, Mr. Valentone, you've got 12 minutes. You've reserved three for rebuttal, correct? Correct, Your Honor. Okay. And then for the appellees, could you just tell me how you're breaking your time up? Sure, Your Honor. Diana Lawless for the city appellees. I'm going first. It's seven minutes. Okay. Mr. Brush for Austin. Ms. Zellman for two minutes for the school districts of the United States, the various school districts. Mr. Brush from Austin for a minute. And then Mr. Greico from the state of New York for two minutes. Two minutes. Okay. All right. Great. Okay. So, as I said before, anybody who wants to take off their mask can do so while they're at the lectern. Otherwise, keep them on. So, Mr. Valentone, I see you've already taken off your mask, so that's fine. The floor is yours. Good morning, and may it please the court. My name is Rory Valentone, and I represent the plaintiffs in this case. Could I ask whether you are pursuing any of the claims in the case against, other than the IDEA claim against the city defendants? Because you don't brief. In this case- I'm asking you a question. No, Your Honor. You don't brief? The answer is no. We have brought actions against other defendants in their home states. All right. So, in other words, on this appeal, we don't need to worry about any of the appellees other than the New York City defendants. Is that correct? Yes, Your Honor. And as to the New York City defendants, you're not pursuing 1983 or rehabilitation act. It's only the IDEA. Is that correct? I don't think you briefed those other claims. Your Honor, to the extent that they may survive, we are not. I mean, I did brief them. You are correct. The focus of this case right now are the IDEA claims. Okay. Not RICO. Well, the RICO is something, as we briefed, we aren't appealing the decision per se. This is the portion that dismissed with prejudice. To the extent this gets sent back to the district court, we would like the option to replete RICO, not the way it was pled here. It wouldn't be a RICO conspiracy cause of action under the statute under D. It would involve different allegations the way we've brought those claims in other states. But we're not appealing her- You're not appealing the- The substance of the decision, no. Just the with prejudice part? Yes. Okay. Getting back to the IDEA claims, as the court is aware, in March of 2020- Let me ask you one other question. Yes. With respect to the preliminary injunction, isn't that academic now that New York City is in person only? I didn't hear the first part of the question. The preliminary injunction. Yes. Part of the briefing addresses whether there should have been a preliminary injunction.  What I'm asking is, isn't that moot, academic? At this point, New York City, the current practice or the current policy is totally in person. You know what I would say? It's not moot to the extent that principles were raised. I believe it was Dark Cloud or Dark Storm versus Cuomo and then Hochul in this court. In California, it was Brock versus Newsom. We have a circumstance where it's very likely that COVID, and we know COVID is going to be with us for many years, that there may be variants that present themselves, and there may be a point in time in the future. At the present moment, perhaps, but the idea that we couldn't seek an order, ordering the school district to come back to court if they want to shut the school district, or they're enjoined from unilaterally shutting the school and changing placements again, it would not be moot, given there is a likelihood. If we were to agree with you on the merits, and we said that it was a change in placement to close the schools, that would imply that in the future they couldn't just close the schools without adjusting the IEPs, right? So you wouldn't need a separate preliminary injunction on that point. If you went on the merits, it follows that they could just close the schools. Correct, if we ultimately prevail. So is there some separate value to getting a preliminary injunction? It would prevent the school district from closing before the case is ultimately resolved. As your honor said, if we ultimately prevail, yeah, they're very well, maybe- You might also say, to the extent that you have ongoing due process proceedings, you're just entitled to a state put injunction, not specifically about the closure of the schools, but just to maintain the status quo with respect to all of the IEPs, right? With respect to the children- Because that would be your argument, that you're just entitled to a state put injunction. Even if the schools are, but then wouldn't you have to show that the school district is somehow departing from the IEP, and the only allegation you have that it is, is the closure of the schools, which is no longer happening. Your honor, I believe you said in the beginning of the question, something to the effect of their due process complaints, or that the children can bring these complaints, but let me just make clear at the outset. This case is different than the normal FAPE case, or case under IDA that I would see, that the court would see. These students were not challenging a proposed program. They were not alleging the IEPs they had in March of 2020 were insufficient. They were happy with those IEPs. The IEPs that said their educational placement was a program consisted of certain services, consisted of a program delivered a certain way, in person, at school. And so your argument is that by moving to virtual or remote instruction that the school district departed is not following the IEP for any disabled student. Is that right? Yes, your honor. As the Ninth Circuit- How can that be right? So if an IEP calls for, say, supplemental tutoring or remedial instruction, that kind of instruction can be delivered remotely, right? So I can sort of see your argument in other cases. So if the IEP calls for physical therapy, maybe providing that remotely is not the same as providing it in person, in which case that might amount to a change in placement. But wouldn't that have to be a determination that takes place in the context of an individual IEP? No, no, no, your honor. Your honor- How can we say across the board that every disabled student's IEP is not being followed? You're saying every IEP is incompatible with remote instruction? I don't know that we got there. The main thrust of the action is that students who require hand-over-hand in-person services, and in my brief I cite a case, Magistrate Parker and Judge Torres, where they find that an IEP that calls for services such as transportation would presuppose that this is not going to be a home program. Physical therapy can't be delivered online. If you have children who cannot hear, cannot see, online services are not going to give them the same type of program that they receive in person. In ND, the Ninth Circuit said a program- Given all of that, why shouldn't you exhaust? Because it's going to be different in every case. In every case, it's going to be a different situation, and it seems to me that's a reason why you need to exhaust so that each case can be considered individually. Your Honor, we wouldn't have to. It's because, if you go back to Honig, the Supreme- I think the city says that 43% of the students with disabilities wanted the full-time remote education. Your Honor, the issue isn't whether they wanted it, whether they didn't, whether it worked. It's whether they gave the parents notice, came to an agreement. The United States Department of Education, through Secretary DeVos on March 12, 2020, issued guidance and said online learning can be used in certain circumstances- We're asking for relief with respect to all the students. We're asking for relief with respect to all students, whose IEP suggests or requires- All students in the entire country, originally. Well, Your Honor, I was not part of drafting that complaint. Right now, I'm seeking all relief on behalf of disabled children in New York. Your Honor said you have a more tailored complaint. You're saying that you're only seeking relief on behalf of students whose IEP calls for something in person. An IEP- But even the example you just gave. So, let's say that there's a student who has mobility issues, and that's why their IEP calls for transportation services. Would it not be the case that being able to receive all the instruction from home remotely would not be a substantial change, and actually might be beneficial to that student who has mobility questions? We've said, the Department of Education has said, whether there's going to be a change in placement needs to be decided on a case-by-case basis, looking at the student and the requirements of the IEP. So, how can we make this decision across this whole class of IEPs? Because what Honing would require of the school district is when they close for more than ten days cumulatively for the school year, that the burden is on them to come to court or to seek an order that would allow them to do what they do. Your Honor, I'm not saying- The school didn't close, right? The school just started providing remote instruction. So, the question is whether switching from in-person instruction to remote instruction is a change in placement. Initially, they closed. And that initial closure, where everybody is home, as set forth in ND, would affect all students equally. Now, I just want to mention a decision in the district court. The judge says that a decision, or an administrative decision, that applies to everybody across the board, consistent with ND, is not a change in placement. Well, what the Ninth Circuit said was a decision that affects everybody equally. The decision here to change placement from in-person to remote learning is going to affect, has affected, will affect certain disabled students to a much greater extent than your typical students. The students with an IEP, their education is what's in the IEP. If that requires in-person physical therapy- I think I started by pointing out to you that I could see that it's plausible that there might be some students who have an IEP where the services that are required really are something that can't be replaced by remote delivery of instruction. But, how can we say that across the board? That, like, every time, that every IEP that calls for anything in person would not be substantially, that couldn't be possibly delivered through remote instruction? And is that really necessarily true? Like, wouldn't you have to have particularized allegations about a particular IEP and say, these kinds of services, this amounts to a change in placement because physical therapy can't be delivered online. But some other things, you know, online could be just a different method of delivery of the same services, couldn't it? Yes, and if that's so, the Supreme Court and the IDEA mandates that the school district work with the parent and agree on the IEP. This is a cooperative placement process. But only if there's a change in placement, right? So if the school is still providing the same services and there's just a difference in the method of delivery, that is, you know, they were doing it in person and now they're doing it remotely, but it's substantially equivalent, there wouldn't be a change in placement and you wouldn't need to change the IEP, right? Again, in the context of the way this was done and in the context of the class that we're seeking to define, the students that need in-person services. To move from, as this court held in concerned parents, we're talking about a general type of educational program, the general type. The general type of program in this case was in-line learning. I don't think anybody could say that if you want to learn how to wrestle, you can do that online or wrestling. You would have to do that live in person. You may pick up some tips, but there are certain things you just can't learn. And maybe if an IEP says that they need to learn wrestling in person, then remote instruction isn't a replacement for that. But if the IEP says they're going to get remedial reading tutoring, that is something you could do remotely, isn't it? It depends on how the IEP specifies they're going to receive that. Some of the children in the school district receive push in and pull out services. They're taken out of the classroom, two hours a day brought to a separate room and they're tutored. To the extent that the school decides to fire all those teachers and deliver those services in class and not deliver them anymore, that would be a change in the student's educational program. That would require- That's kind of my question. So if in fact the IEP says, okay, they get normal instruction with their class, but they also get one-on-one instruction separately because of their needs, isn't it at least a debatable point whether doing that in a classroom or doing it on Zoom is substantially equivalent? Not if the class or subclass of students can't hear, can't see, and the way it's delivered one-on-one is- But now you're saying, well, it could be substantially equivalent depending on the particular characteristics of the individual students, which then goes back to the question about don't we need to consider this in the context of a particular IEP and a particular student? Again, I would say no, given the way this was done. The school district did not engage the parents at all. To the extent that the defendants may say, the US Department of Education said online remote learning is okay. If you look at question five in the March 12th, 2020 question and answer bulletin that was put out, Betsy DeVos and the DOE said, you can use online remote learning when it's incorporated in an IEP based on an agreement with the parents. The parents would have to agree to when the remote learning plan is triggered and how it's used. What we have here, again, is Congress meant to take that unilateral decision-making power, and not just to the original IEP dependency. But the original IEP is something that the parents are supposed to participate in and arrive at. And your honor is correct. If the IEP isn't changed, then it's only to go to the parents again. But clearly, going from, and again, it's a ninth circuit held at ND. And this court sort of affirmed that whole rule. In TM, it cited, this court cited two concerned parents describing what an educational program was. And it said, see also ND. And in ND, when the Furlough Friars took effect, every student was affected the same way. Went from a five-day school week to a four-day school week. The ninth circuit specifically- But their IEPs were different, right? So even though they were affected in the same way, isn't there a complicated fact question as to whether that effect on them effectuated a change in placement? The ninth circuit didn't say that. The ninth circuit said, if they said going from in-person to home instruction, that would be a change in placement. They didn't say depending on individual IEPs. Because again, if the program that's contemplated is an in-person program, because the way these children can learn. The only way they can learn in certain circumstances is with the hand-over-hand services they're being given. Okay, so maybe let's talk about exhaustion. So let's say you do file due process complaints and you say it affects a change in placement. And I don't agree to the switch to remote learning because the services of my child require the in-person instruction. Shouldn't we allow that to be adjudicated by the agency first before you can come into court with a claim? Did the agency put the parents on notice and get their consent? If not, the answer is no. If it is, yes. These causes of action are more akin, I would say- I understand they can do it if they get the parents' consent. But if there's a disagreement, then there's a process where you go before a hearing officer and you adjudicate the question, right? In individual circumstances, perhaps. But in this case, one order would put everybody out of school. Why would it not be appropriate for one order- Whoa, whoa, whoa. Okay, this is, first of all, there's three judges here, and so we all get a shot. And second of all, if a judge is asking a question, you've got to stop. I didn't hear you. Well, then you've got to listen. I apologize. So, you've conceded that you didn't exhaust, right? We, we- You're saying it was futile. Correct. You've conceded you didn't do it. Correct. And your bases for not exhausting are that, first of all, there were just, because of COVID, there were too many, it would be too delayed, and you wouldn't have been able to get a hearing or an audience with a hearing officer. But what's in the record to support that? Your Honor, there's more than one reason. And I would say, first instance, I would say the main issue is not the exhaustion is that it would take too long. In this case, and again, we raise a pendency claim in here, in this case. The Supreme Court has said that children are entitled to remain in their status quo, current educational setting, unless the parents agree to a change. So what we did, well after the ten days took place, we came into court and we asked for an injunction under 1415J, which would be automatic. You don't have to exhaust- The question is, why is it futile? Why is exhaustion futile? I think that was the question. Well, part of the reason it's futile, Your Honor, is after the case was dismissed, we filed certain causes of action administratively, and they're usually from being adjudicated. In this case, we were seeking an order in the statehood provision. And this court has held, in many cases, that you don't have to show exhaustion when 1415J is triggered. The law says that the children may not be moved out of their status quo educational setting without agreement of the parents. And if that happens, while proceedings are happening, the children are entitled to have their educational program delivered as written in the IEP. Now, there may be some argument that that means you have to file a DPC, but we saw a case law that says that's not true. What I'm hearing is not a futility argument. What I'm hearing is you don't think you have to exhaust. We raised a futility argument as well. And the futility argument- Your main point is you don't need to exhaust. Don't need to- What supports that? Is there, what legal basis is there for that? Don't need to exhaust, because in agreement with all of the rest of the members, Judge Sotomayor, 2002, wrote, this court held, when you're seeking relief under the statehood provision, which we were doing, we were seeking an adjunction under 1415J- You're doing both, right? You're seeking the statehood relief, but you're also seeking determination on the merits, right? Well, Judge- A moment ago, you said maybe the statehood request is moot, because now you're back in person, and so you don't need to maintain the status quo, because it's no longer the case that it's all remote, and so then maybe we're only facing the merits question. Do you disagree with that?  It requires the children to remain in their then current educational setting, which was the IEP they had back in March 2020, until these proceedings- I don't think the school district disputes the idea that they have to maintain the students' current IEPs, right? They're just disputing that the move to remote learning was a change in placement that was a departure from the IEP, right? So now that they're not doing remote learning, it seems like that dispute is not a live dispute. It is what you're saying, Your Honor, but the interesting part is in L.V. before Judge Preska, and I can cite where it is on the docket in a moment, but the DOE initially took the position that it didn't have to fund private school placements because any private school that went to remote learning, the parents effectuated a unilateral change in placement that they didn't agree with, and because it wasn't agreed upon, it was an educational change in placement. That was their position in L.V. So then it changes. Then it changes. Then when our lawsuit starts, they say, wait a minute, this isn't a change in placement. This is what we have to do. And again, what we're discussing today, what I'm suggesting here, is that the judge could have allowed this case to proceed, and these cases could have been with discovery- Can I just back up a second? So what relief can you get in this case, right? So if the schools are open again, you don't need the relief of ordering the schools to reopen. You do have maintained the IEPs you had before. The school districts have not changed the students' IEPs. You would be entitled anyway under the IDEA to re-evaluations and whatever services are needed to catch up the student to his or her goals and so on. So what is the relief that you're seeking in this case that would give you some kind of compensation from the status quo in which you're harmed? When your Honor says we could get that relief anyway, going back, Judge, to your question earlier, the futility argument, there are 200,000 special ed students in New York City. There are only maybe 1,000 hearings held a year. There are 10,000 due process claims pending currently based on information that was in a complaint- I appreciate your argument that that's going to take a long time. I guess my question is, what are they seeking in those proceedings that they might get later that we could provide now? Compensatory education? You have students that are 18 years old now, and nine years from now, somebody decides they were entitled to two more years until they were 23. It's a little long. So they had missed out on some education during the closure period, you're saying, and that they should get services to compensate for that? Well, if we proceed with discovery, and discovery proceeds as I anticipated would, and we find out that these children, the IEPs were changed. They weren't learning because they couldn't learn remotely. Apart from IEEs and specific programs that could be tailored to the students in their own hearings, the court can order a day-for-day compensatory education. Every time they were subjected to remote learning where they did not learn, they're entitled to compensatory education. Now, if they're still in the system, so if they're still below 18, they still are entitled to whatever they need to meet the goals of the IEP, right? Until 21, yes. Until 21. So when you're saying that they're going to need an order to obtain compensatory services, is that only for people who have aged out? What I'm saying is it could take up to 10 or 20 or 30 years for individual IHOs to adjudicate 200,000 DPCs to give every child that had remote learning, that wasn't in your program, to learn. It would take the court and a special master, maybe six months to eight months, to figure out how we can order the OE to add two years of education to every child. It's going to take a long time. I guess my question is, what is the thing that would be ordered? And the thing that would be ordered would be compensatory education services that get the students back in line with the educational goals of their IEP, is that right? Partly. Well, are there any students whose parents took them out of the public schools and went to different schools and are seeking compensation for the tuition? Is that part of this suit at all? The plaintiff we have in this case has not been plead or sought to date. To answer the question, are there students- That's not part of this case at this point. Compensation for taking somebody in and putting them in a private school. At this point, well, yes and no. At this point, no, but to the extent that now three years later a parent may have done that, or did it at some point, they should be entitled for out-of-pocket expenses. But that's not, it's either in the complaint or it's not in the complaint. You've pleaded or you've not pleaded? I believe it was in the original complaint. I think you did have it in your complaint. That's the question. They were entitled to compensation. So is that part of your claim? That parents provided out-of-pocket expenses to- Certain parents- The school district should have been provided during the period? Yes, and I'm sorry. And it may not have been a complete change to private school. It may have been tutors, as I- It says we're only focused on the IDEA. Are those expenses that are recoverable under the IDEA specifically? I'm sorry, I didn't hear the question. You said you weren't pursuing your other claims, like your 1983 claim and so on. But these are claims for expenses that you could recover under the IDEA? They would be available under the IDEA, yes. All right, we're way over. I do want to hear you on the RICO, the dismissal with prejudice. Do you want to speak to that? Your Honor, I would again say there's no doubt that RICO was not in the complaint. There's no doubt that RICO was put too broadly, not specifically. It was in a RICO case statement, not the complaint. But there are facts to suggest that assurances were made to the United States Department of Education that money would be used a certain way. Money would be used to implement children's programs, special education students. The money was not used for that purpose. And I'm not saying- Let's stay focused here, right? Because what happened is you filed a complaint without a RICO claim. You then filed a RICO case statement consistent with Judge McMahon's individual rules. And then she effectively amended the complaint by basically attaching the RICO case statement to the complaint and then considered that as part of the defendant's motion to dismiss. Do I have that right? Correct. Okay. Did you object to that at any point? Object to the dismissal? Object to the amendment, as it were, of the complaint to include the RICO case statement. I don't believe so. And I'm not trying to dodge the question. Just to be clear, I was hired in the law from the day the decision was written. So I don't know- But you know the record. And when I say you, I mean your side. I don't know if there may have been an in-court representation. I am not aware of that happening based on the pleadings I've read. There may have been a conference. I don't want to mislead the court or not be honest. I don't know if something happened in the court proceeding or otherwise. But everything I've read suggests you are correct. There was no objection to the amendment of the complaint. And then there's a second, a supplemental RICO case statement that is submitted by the plaintiffs. And that then is also considered before the judge dismisses the complaint, right? That's my understanding. Correct, Your Honor. And there's a briefing on this, right? There's a briefing on the motion to dismiss that includes the RICO claim, right? That's correct. And there's nothing in the brief that says, by the way, we want an opportunity to amend our complaint. There was not. Okay. Can I ask what the importance of the RICO claim is? So initially it seemed pretty significant that you'd have the RICO claim because you were trying to maintain a nationwide class action against all the school districts nationwide. But you've just said a moment ago that we're now only talking about claims against the New York City defendants. And you have New York City plaintiffs. So you could maintain IDEA claims against the New York City defendants without a RICO claim, right? So what difference does it make to your recovery whether you can maintain the RICO claim or not? Is there any extra relief from the RICO claim that you wouldn't get under the IDEA claim? Yes. And that would be- What is that? We're seeking, and I believe the case was Gingrich. The Second Circuit talked about declaratory and adjunctive relief. We're not seeking money damages under the RICO claim. IDEA does allow causes of action against school districts that mismanage funds. But the remedy is to strip the school district of funds. We don't want the funds stripped. The remedy we're seeking is to have a special master appointed, if it turns out. And again, I want to say before, to be clear, there's no allegation that someone stole money and went on a trip to Puerto Rico or the Bahamas or otherwise. The allegation here is that it was used for a purpose that the school district said it wouldn't use it for. It wasn't used based on assurances that were given to the department on special education kids. To the extent it may be used to buy PPE or for other things that are not allowed for the IDEA, we would want- If the remedy for misuse of IDEA funds under the IDEA is to withhold funds in future years, can you use the RICO statute to just say we're just going to ignore that whole scheme and we're going to appoint a special master to then take over the budgets of the school districts and try to reallocate existing funds that are not IDEA funds that came from the federal government? I'm not aware of any rule or principle that would allow a plaintiff to plead the way they want to and ask for the relief sought. The relief sought is for the court to appoint a special master to make sure the funds are used for the purpose of being used. I don't know if the court is suggesting that we were obligated to plead under the IDEA and have those funds stripped. We don't want them stripped. I'm just saying that a moment ago you acknowledged that the IDEA has a remedy for when school districts don't use the IDEA funds appropriately. And you're saying the reason that you're not seeking that relief under the IDEA is because you want a different kind of remedy for the same harm. And so I'm asking, do you think it's appropriate that we sidestep the IDEA and just say, okay, we're going to let you plead a RICO claim to deal with the problem that Congress has said should be addressed through a specific process? The answer to the first question is I don't believe it's inappropriate. And then the second question, I'm not sure if it was the Congress, the Third Circuit has allowed the cause of action to proceed. I'm not sure if it was under 1983 or if the IDEA has a specific written provision. Now, it may be in Part B, a provision that says specifically, yes, you can maintain a private cause of actions. We know this evolves in cases the Supreme Court have given parents the rights to bring actions separate and apart from the children. I think I understand. That's fine. Judge Chin, did you have any other questions about RICO or anything else? No. Thank you. Well, we've gone way over. It's not shocking that we did, because this is a case of moving parts. But you've still got a couple minutes for rebuttal, three minutes for rebuttal. We'll hear now from Ms. Lawless. Good morning, your honors. May it please the court. Diana Lawless on behalf of the city appellees. And as your honor, Judge Sullivan- You can lower that, I think. Oh, sure, yeah, I know. One of the beauties of that lectern is it goes up and down. This always happens when I come here. Is that better? Whatever's better for you, but I think you want to get the mics close to your mouth. Right. You're good? Yeah. Might I? Yeah. You can move both of them. So both of the microphones work at the same time. Oh, sorry about that. OK. Good morning, your honors. May it please the court. Diana Lawless on behalf of the city appellees. Judge Sullivan, you kind of took what I was going to say. There's a lot of moving parts here, so I want to try to cut through this as cleanly as I can. I think everything I'm hearing is that the plaintiffs are seeking really individual claims about what happened individually to students during the pandemic. And also, those can be administratively exhausted. And in fact, even judging by the case that he cites, that one district court case, proceedings have been ongoing, taking into account things that happened to students and their education during the pandemic. Those have been adjudicated in the normal course. I also want to point out, this is a 12B6 motion. This is a conclusory complaint. There's no particularized allegations about the denial of a fate for any child. There's just bare allegations about two New York City students, that they're New York City students, and that a fate was denied. They would need more to allege the denial of a fate. So that's a pleading deficiency. Sure. Right? The district court seems to think that there just inherently would not be, in any circumstance, a change in educational placement. But is it at least conceivable that some IEP might call for something that needs to be delivered in person, and the change to remote instruction just would amount to a change in educational placement because they're just not providing substantially equivalent services. So I think it's not a change in placement as change in placement is understood in the provision that they brought it, right? They brought the under pendency. There's not a change in placement that they're entitled to preliminary injunctive relief pending an administrative proceeding that they have to maintain their placement. There's no change in placement here because this wasn't, I think, we have to take into account- It's an effective change in placement. I understand the city is not, or the district is not trying to amend the IEP, but the claim is they're not following the IEP. So they've changed the placement without consent, without amending the IEP. That's the claim. And a parent can bring such a claim. A parent can bring such a claim in an administrative proceeding that has to be exhausted, and I mean, I think that- I guess I understand the idea that they haven't provided particularized allegations that there was an IEP here that was not followed. But I guess my question is, is it plausible that you might have a circumstance in the context of an individual IEP where it calls for services that just can't be provided remotely, and so therefore, in a different case, a parent would have a plausible claim? And I think I have to say that if there is a parent who brought a claim on behalf of a student, brought a timely claim, and I don't know if you want me to consider this pendency claim or not here. I think we would always say that during the period at issue, which was the 2020 to 2021 school year, that a student would not be entitled to a pendency placement, which would mean a placement in an in-person school when nobody else was in an in-person school. But if- The dismissal was without prejudice in any event, right, as to these things. They could have brought a different claim, and if it were plausible that there was a claim as to a particular individual child, they could have done that. Yes. But they didn't. Right. These claims did not. So I think to try to- It's just about that period. Sure. I take the point that they wouldn't be entitled to attend an in-person school when nobody else was attending an in-person school. But there might be some supplemental services that are not attending the school, like somebody gets physical therapy on a regular basis and so on. And maybe the claim would be, well, you can't provide that remotely. And so even if the in-person instruction for general classroom instruction is no longer happening, it affects a change in placement if you stop providing the in-person physical therapy. And so therefore, they might have a due process claim. I mean, yeah, I just want to, I think I don't want to, under the case law, I don't want to call it a change in placement that would entitle, I think to the extent that there is- Okay, we can say they might not be following the IEP. Well, if there's a denial of a FAPE claim, right, then- Denial of a FAPE claim, okay. Okay, then they could bring that individually and you could obtain compensation if there was a finding that there was a denial of a FAPE. But I will also point out that it's not like, I think your honor said, they didn't amend the IEPs. IEPs have to be amended yearly. So, and the school district, the DOE was continuing to amend IEPs during the period, even in 2020. So the students at issue have had their IEPs amended and had their IEPs taken into account. Well, that's right, but the school districts did not amend the IEP to add remote instruction. Right, right. So it wasn't amended in the relevant sense that they're challenging. Right, and then we're saying that that's not a change in placement, particularly under the circumstances here where it's not like the city school district and other districts across the country decide we're going to implement a new way for everybody to learn. It was because their hand was forced by pandemic, right? It was forced by this public health emergency that essentially shut down society. And they had to find a new way, I think your honor said, a difference in the method of delivery. They were still having their educational programs done, but because of the uncontrollable circumstances, it was delivered in a different way. Okay, but I mean, you're primarily relying on exhaustion, right? So, yeah, to the claims that exist, right, I agree that the pendency claims have to be academic, because we've moved far beyond. So yes, I think that beyond pendency, any other issues that are raised here are about individual students who have varied experiences. And I don't see a problem with exhaustion for that. I know council has just raised a whole bunch of different things. I think that taking too long, Judge McMahon was correct, that was the only one raised below. I think she was right to say that that's not enough to establish administrative exhaustion. Well, I mean, what was the record on that? I mean, it didn't seem like there was much developed at all, really, to indicate what the delays were or whether they were persistent delays. Right, I mean, I guess it's kind of all, I mean, I kind of feel like this case goes around in circles, because it's the way this was pleaded, this was a 12B6 motion. So it's not that anybody really could put in too much, but- Well, there was also, however, a preliminary injunction, right? Right, right, so on that record, right, I mean, they just, actually, if you go through, it's very confusing. Nobody could really figure out how many plaintiffs had filed, when the filings were made. It seems like a lot of the filings were made after this complaint was brought. Certainly, the complaint was brought in July of 2020 for the 2020-2021 school year. And the injunctive relief was asked for, I think, a month or so or two months or so afterwards. So even if they had said, hey, we filed complaints for this, they didn't plead or show that they did any of that until around the time that they came to the district court, or after the time that they came to the district court. So he didn't prove that they even had a chance to exhaust. So, I mean, I guess the other basis that I don't think was raised below, but it is in the brief, is that, well, no hearing officer would have had the authority to order the relief that was being sought here. So if they had attempted to exhaust, they attempted to get in front of a hearing officer and say, there's no way this child can learn properly and therefore get their faith without in-person learning. The hearing officer would not have been in a position to say, okay, I'm ordering in-person learning. So, I mean, I think that's probably been waived, but just if it's not been waived, what's the response? I think that's waived, but I think the response is that this court has never found that something like, oh, this is beyond the authority of a hearing officer can give you relief under the IDEA and get rid of your exhaustion remedy. I think the only situation this court has recognized is when there's a problem with the actual procedure. And that there's a problem with that the school district is not participating, that there's a problem with the way the hearing officer's conducted. There's a problem with the way that the proceedings happen, I guess a procedural problem. Is it right that the hearing officer would, I mean, I understand that the hearing officer wouldn't have the authority to reverse the governor's order and reopen all the schools for all students. But in the context of a particular proceeding with a particular student with disabilities, a hearing officer could say you need to provide some level of in-person instruction to that one student, right? I think that's true. I mean, I think that's true. Even if the school is generally closed, they would say, but an occupational therapist needs to make an appointment with the one student. I mean, yeah, I think that even the order that he cites, this LV order that came down last December of 2020. The district court there even talked about an individual student and said that there should be forward-looking in-person therapy. But if the pandemic intervenes, this could only be ordered to the extent it could be safely performed. So I don't think that anybody could kind of overtake the government's discretion and government's decisions about public safety and when schools can or cannot be opened in order for all the children to attend schools. Presumably, the hearing officer can just defer totally to what they say about safety. I mean, if the government had said it's not safe to provide any services to anybody, there might be a transparently incorrect justification, right? So the hearing officer presumably would be able to say, well, I understand your concern about safety, but the needs of the student are. I mean, would that not be a possible outcome? I mean, I think we're very far from this case, but I think that forward-looking relief can be afforded to determine how the school district has to meet the child, a particular child, a particular student's IEP. I don't know, I'd need to know more facts about that particular student. But I think here this was brought as a nationwide class action, a very scattershot complaint. The complaints have totally transformed while we've been here. I think that the- So on the pendency claim, though, so you said you think it's moot. Yes. So what about opposing counsel's argument that, well, they might shut it down again or they might have other closures for the pandemic, and or maybe they're just entitled to a state put order because they have pending due process proceedings. Could that rescue the pendency claim? I mean, you could have a state put order if you have a pending due, right? So I think the problem with the way that they frame dependency complaints, a free-floating complaint, a free-floating claim, it's not. It's just while the administrative proceedings are adjudicated. So properly brought, I think you could say that you're entitled to pendency to the extent that there is a change in placement. First, the court would have to find a change in placement. But I think here particularly, it seems strange to me that there could be a declaratory relief that essentially the schools could never close under the IDEA. But we just don't know the circumstances, right? Can I interrupt? But it seems to me there are no proceedings taking place. They didn't exhaust. Right. They're saying they didn't have to, so there's no, there's nothing to be sort of stayed or put on hold during the pendency of a proceeding that's not taking place. Yes. Wait, I'm sorry. I thought that they did say to the district court that the parents had submitted due process complaints. The district court said, well, I know at least some of them have. Right. And I'm going to assume for the purpose of this decision that all of them have. The court, I'm just going to assume that there are, in fact, proceedings. The failure to exhaust is they didn't wait until the completion of those proceedings. But there are ongoing proceedings, right? Well, I think it's two different things, Your Honor. I'm sorry, it gets very confusing, right? So, pendency would be that there can't be, while an administrative proceeding is going on, there can't be a change in the educational placement. Right. And then the underlying claim has to be still adjudicated. So, I think when they're arguing, they're kind of arguing two different things. When they're saying we're entitled to the injunctive relief of pendency, but also we didn't have to exhaust. Like, you can't have both, so you'd either. Well, I don't know, doesn't it make sense to say, well, we've initiated a due process proceeding, but we don't have to wait until it's completed. And so, therefore, we don't need to exhaust, but we're still entitled to pendency because there is actually a due process proceeding going on. But I guess, I guess your point, your point is they're saying that actually it never needs to complete, and so that it doesn't make a lot of sense to say that they should have the relief of pendency. And I would also say that the theory that Your Honor just said about that they wouldn't need to exhaust, that they could be read together, that they could start it, but not have to finish it. I think that would be novel, and I don't know that there would be a case that's acknowledged that just because pendency's always just been considered a temporary remedy pending the completion of the proceedings. Your Honor, does anyone have questions on the IDA? If not, I'll just touch quickly on the RICO. It's basically waived, as counsel said. Everything, I don't think that counsel can say that he could want to make different claims if given the chance, and he's asking this court for the first time. He had the chance below. He should have tried to amend it for the several very good reasons, in thorough reasons in the district court's decision, and also in a brief. We don't think there's any way he could state one. And also, I'm just hearing for the first time about some of the injunctive relief that he's looking for under RICO, and for a special master. I've never heard that before in this litigation. Is that a normal remedy for misuse of IDA funds? I can't specifically speak about what a normal remedy for misuse of IDA funds within the IDA would be. I just know about proceedings with respect to individual students. I'm sorry, Your Honor, it's the first time I'm hearing about that. But I don't think there's a point in the RICO claim other than for damages. Then he's saying he's not seeking damages, he's seeking injunctive relief. Well, it is sort of an unusual way to have a pleading amended. Would you agree? I very much agree. I think counsel, right, in a counsel case in particular. But the point is that nobody objected to it, right? To the what? The court effectively amending the original pleading and adding the RICO case statement. And then the supplemental case statement. Sure. I mean, we accepted that the district court said that that was permissible under her rules, but we certainly move to dismiss it on the fact that it failed to state a claim. As pleaded. I guess the argument is that they never really got to make their claim. Your point is that they did get to make their claim, it just sort of made it into the pleadings in an unorthodox way. Right, but they also didn't seek to amend after they did that. To bring up everything that they're trying to bring up now. And they could have done that before the district court. All right. Okay, thank you, Ms. Wallace. Thank you. We ask that you affirm. We now hear from Ms. Zellman for two minutes. Ms. Zellman, you're on the screen. Can you see and hear us all right? I can. Are you able to hear me okay? Yes. Good morning, your honors. May it please the court, my name is Joanna Zellman. I am appearing today on behalf of my client, which is over 100 public school districts in Connecticut, and several districts in other states, as well as all others who joined in our brief, including other school districts outside of the New York City, and other state boards of education for purpose of care, often referred to as a non-New York City defendant. I first thank you for permitting me to appear here remotely today. I don't believe that I have much other to say. I do believe that all claims against non-New York City defendants have been waived, and that plaintiff's counsel has now conceded that at the start of this argument. So if there's no questions by this court, I will yield the remaining of my time back to Ms. Lawless. Okay. I think she got it and then some already. So it seems to me the only thing that might really affect your clients at this point is the RICO being dismissed with or without prejudice. So do you have anything to add on that, or are you going to just rely on what Ms. Lawless said? I will rely on what Ms. Lawless said. I believe it's also waived. I mean, it's not briefed with respect to any of the non-New York City defendants. They're not even mentioned throughout the brief. The brief is very clear that they're talking about the New York City defendants only. So I would submit that that has been waived, in addition to Ms. Lawless's other arguments. Okay. So seeing no other questions from the panel, we'll now pick up then with Mr. Brush. Thank you, Ms. Zellman. Good morning, and may it please the court- You've got a minute. Let's see how fast you can talk. I'll make my best use of it. I represent the Austin Independent School District, echoing what Ms. Zellman told the court. I think it's pretty clear that the district court needs to affirm as to Austin ISD and any of the out-of-state school districts. Not only was the district court's decision correct on the merits when it comes to the procedural questions, the personal jurisdiction, venue, and improper joinder, there was no brief challenge, no challenge in the briefs constituting waiver. And I think today we've had a concession from my colleague on the other side that they do not seek to bring claims against Austin Independent School District or any school district in Texas at this point, which requires affirmance. I would just address the court's question about RICO. I don't think that the complaint could be amended because those claims have been waived as to Austin ISD because they were dismissed and then not briefed. And I do think the concession today, my understanding was that plaintiffs are not trying to pursue claims against out-of-state districts, and I think that would bind them from trying to bring a RICO claim against the Austin ISD. We would request that the court affirm the dismissal of the Austin Independent School District. All right, thank you. Well, you went nine seconds over, but that's pretty good. And now Mr. Grieco? Yes, Your Honor. Am I pronouncing that right? You are, Your Honor, yes. Okay. Good morning. Matthew Grieco for the New York State Department of Education. I'll be very brief and confine my comments to the justiciability of the claims against my client. As Your Honors have adverted to earlier in the argument, the appellant's opening brief does not raise any claims as to our client with respect to proper service, the basis on which the claim was dismissed below. Plaintiffs have waived any challenge to the lack of personal jurisdiction, both by failing to raise the issue in their briefs to this court and by failing to correct the lack of service below. And alternatively, even if service had been affected as to the New York State Education Department, the New York State Education Department would not be a proper defendant. Every district court in the circuit to consider the question has held that the IDEA's private right of action provision extends only to local education agencies, not to state supervisory agencies. And should this court reach the issue, it should hold the same. That issue was briefed, although I think not decided in the Ventura de Paulino case. In any event, the appellants have once again waived any argument that the State Education Department is a proper defendant by failing to raise that issue in their appellate brief. Finally, because the district court's briefing order barred the submission of motion papers by the State Education Department and indeed by all parties other than the city, in the event that this court saw any basis for remand, the only appropriate remand would be for the ordinary course of briefing to resume below, and the court should not take a position on the merits of any claims against the State Education Department. Unless there are questions from the court, we would rest on our brief. So, I mean, you're saying that the Second Circuit law is clear on this, or do you think we need to make it clear that a State Department of Education is not subject to the private right of action under IDEA? So every district court, to consider the question. So this is one you think that the Circuit hasn't ruled, and sure, that's what you think. Yes. Now, in this case, I would say that the proper basis for affirmance would be lack of service. The district court never had personal jurisdiction over the State Education Department because of the lack of service. But if for some reason the court were to look past that, then the proper basis for affirmance would be that the State Education Department is not a proper defendant. All right. Okay. Thank you very much, Mr. Grieco. Mr. Bellantoni, you've got three minutes for rebuttal. Thank you, Your Honor. And I apologize. I'll try to do this quickly and jump around a bit. I'd first like to address- You know, it seems that your complaint is evolving, right? It's a different complaint from what the district court ruled on. Yes? Well, yes, if- Excuse me, you're backing away from it even as we're here this morning. The dismissal, putting aside the issue of Grieco for a moment, was without prejudice. Why don't you just file another complaint based on what you're now arguing? Why do I have to go through this entire exercise? To file a new complaint where Judge McMahon dismissed with prejudice? It was with, I thought most of the dismissal was without prejudice. The Grieco was with prejudice. Putting aside the Grieco. The Grieco question, even on the Grieco, you're saying the only issue is whether you should be given leave to replead. For Grieco, correct. For Grieco. And on the other things, was that without prejudice or with prejudice? It was without prejudice, but- And if it was without prejudice, why don't you just file another complaint now that you've changed your allegations? Judge McMahon, Your Honor, didn't just say that we failed to plead correctly. She said that this change, the action going from school to remote in New York City was not a change in placement. If we refiled, wouldn't the court hold, or this court, or a sister court, that she resolved the issue and even if you repackaged it- I don't know what would happen, but what I'm hearing is the lawsuit is evolving. You're now backing away from a lot of the allegations in the complaint. It seems to me it's a different thing that you're talking about now. Times have changed. We're two years down the road. I'm not sure why we're going through this exercise. We're not backing away from any of the allegations as to these students in New York City. I have to back away from the allegations as to the out of state defendants. When you sued 13,800 school districts, was the intent really to serve them, each one of them, and include them in the lawsuit? I mean, why was that done? Your Honor, I wasn't there at the time. I can only assume that the attorney is backing away from these things. I'm not backing away. I don't want to be disingenuous with the court. It's troubling that this kind of lawsuit was brought the way that it was. And your Honor- Was the intent to serve 13,800 school districts from around the country? And then to accuse them of participating in a RICO scheme? What's the good faith basis for that? Your Honor, I believe the good faith basis was information learned from the clients in various jurisdictions. That a school district in Utah is conspiring in a RICO conspiracy with someone in New York City over the treatment of these IDEA cases during the pandemic. There's a good faith basis for that kind of a claim. Your Honor, again, I wasn't there. I can't say there was. But I would suggest, Your Honor, that if that portion is troubling to the court, it doesn't make the portion involving New York City defendants, plaintiffs, and defendants- To me, it undermines the credibility of the whole thing. I'm asking you for what was the good faith basis for a complaint where you are up here defending it, and you don't know what the good faith basis was for making that kind of allegation. I find it troubling. That's all. Go ahead. Finish up. Thank you. Can I ask a question about a point that Ms. Lawless made in her argument? So when we talk about the statehood claim and its interaction with the exhaustion, does it make sense to say that you want a statehood injunction, which you normally get pending the administrative process, but then you're also saying we don't need to complete the administrative process. What's the function of the statehood provision if you're saying you're excused from going through the administrative process to begin with? I believe the statement was not accurate, and I'll explain why. Yeah, that's what I'd like to know. The CFR, I believe it's 34 CFR 300-518, mentions that the statehood provision is triggered when a due process complaint is filed. But 1415J omits that. The district court in the Eastern District, Judge Ross, held in VD versus New York, that the plaintiff's lawsuit in that case concerning an IDA proceeding was enough to trigger the statehood provision because that was a proceeding contemplated under 1415J. 1415J doesn't say administrative proceeding. And the district court cited a case out of New Jersey. The Third Circuit held that a suit filed in federal court challenging a statewide action was sufficient to trigger statehood relief because the plaintiff was not required to exhaust administrative remedies, or doing so would be futile. So you don't have to file an administrative proceeding. Granted, there's not a lot of case law on this because most of the time- So your position is that even if you hadn't filed any due process complaints, just by filing this lawsuit, you'd be entitled to a statehood injunction pending the completion of the lawsuit because you read 1415J not to apply just to administrative proceedings, but even to judicial proceedings. I understand that argument. I get that. Okay. So let me then ask a follow-up. So if we were to affirm the district court on exhaustion grounds, would that then moot also the preliminary injunction appeal? I would argue not, Your Honor, but- I don't think your answer would be no because the implication of saying you need to exhaust is you need to follow through with the due process proceedings. And so you should get statehood relief until the administrative proceeding is complete. And I think that that would be your argument. But then you have another problem with the statehood relief, which is the fact that the schools are open now. And so it's not obvious that your argument that the statehood relief would get the schools to reopen has any legs because you already have that relief. I think part of the confusion, at least in my mind, is we're talking about seeking an order from the court and an automatic injunction that the statute imposes when the lawsuit is filed. When the lawsuit is filed, it's a proceeding under 1415J. No, no. Mr. Bellantoni, we get all that. But if you filed this suit today, right, you wouldn't be seeking a preliminary injunction, right? There'd be no basis for it because the schools are open. Your Honor, it sounds right, Your Honor. But if we bring a cause of action alleging that their status quo educational placement was changed under 1415J, that would automatically trigger the district's obligation to keep- Can I take that question from a different direction? So in your complaint, you allege the school districts were departing from the IEPs because they had moved to remote learning. They're no longer doing that. They're now doing in-person education. So in what way, currently, are the defendants departing from your clients' IEPs? If the children are receiving the services they did in March 2020, they would not be. I don't know that to be the case right now. There are children at times that go back to- Are there any locations in the complaint that say that they're departing in any way other than the move to remote education? With respect to these plaintiffs, Your Honor, there may be some children that are still at home remotely. I don't know if the IEPs were changed during COVID, but to answer the question in the first instance, again, if the children are receiving the services that were required to be given in March of 2020, in the manner they were required to be given, there's not a current violation of the IDEA. But we still have to maintain the suit in this court to get the compensation for the 200,000 students that they're entitled to. That's the merits. That's not the preliminary injunction, right? I imagine- You're not seeking injunctive relief, if that were the case. You're filing today. You might be seeking damages, but you wouldn't be seeking injunctive relief. If it goes back today, this moment, perhaps not, but we wouldn't want to be- Back to Judge Sullivan's question. If we were to affirm the dismissal on the basis of exhaustion, there would be no claim existing. And if there were no claim existing, you would have no entitlement to a preliminary injunction, right? You need to have a valid complaint to get a preliminary injunction. Would you not agree with that? Your Honor, I would, but- And if there is no valid complaint, then we don't even need to get to the issue of an injunction, correct? The injunction? Correct. Thank you. Thank you. Okay, all right. Well, we got our money's worth, certainly, so thank you all. We will reserve decision. That concludes the arguments on the calendar today. We have three other cases on submission, which we will also reserve decision on. Let me thank Ms. Beard, our courtroom deputy, and all the folks who make this courthouse run so smoothly, including with respect to a partially remote argument. It went very well, so thank you. Ms. Beard, you may adjourn court.